**McALESTER URBAN RENEWAL AUTHORITY, Appellant,**

v.

**Mary Jane LORINCE et al., Appellees.**

**McALESTER URBAN RENEWAL AUTHORITY, Appellant,**

v.

**Gene STIPE et al., Appellees.**

**Nos. 43828, 43829.**

Supreme Court of Oklahoma.

July 18, 1972.

Bratton, Allford & Ashmore by Gary W. Dugger, McAlester, for appellant.

Willard Gotcher and Charles V. Foor, McAlester, for appellees.

IRWIN, Justice.

Two condemnation proceedings were consolidated for trial and consolidated on appeal by order of this Court.

McAlester Urban Renewal Authority (plaintiff) commenced condemnation proceedings against appellees (defendants) to acquire defendants' property for urban renewal purposes. A jury trial was had to determine the amount of damages defendants sustained by reason of the taking. Plaintiff appealed from the judgment rendered on the jury verdict.

In February, 1967, plaintiff adopted an urban development plan which was approved by the McAlester City Council. The plan was filed for record in December, 1967. According to the plan, a Vo-Tech school was programed to be constructed on defendants' property. At the time the plan was adopted and recorded, defendants' property was zoned for residential use. Prior to taking defendants' property on July 1, 1969, the property had been rezoned to permit defendants' property to be used for the construction of an educational project in addition to the residential use. At the time of the taking, the zoning ordinances would not permit a commercial use of defendants' property.

Defendants proceeded on the theory that the highest and best use of the property was for commercial purposes, although the zoning ordinances did not permit the property to be used for such purposes. Witness J, an attorney and investor in real estate, testified for defendants. After giving a summary of his background and stating that he was familiar with the area and defendants' property he was asked his opinion as to the highest and best use of the property. Plaintiff objected to this question on the grounds that witness had not been qualified as a real estate appraiser. This objection was overruled. Witness J, testified that the highest and best use of the property was commercial as a shopping center and it would be an ideal area for bonded warehouses or any manufacturing that needed the railroad siding. He ex-

pressed his opinion as to the value of the land based on a commercial use. This witness testified he had taken into consideration that the property was zoned for residential purposes but: "Ever since I have known that property and I would say that it is more than thirty years, it was never property you could consider as residential property. It has zoned itself by virtue of the highways and railroad. It is commercial from every aspect you look at it. You couldn't get a loan on a residence in that area whatsoever." This witness testified that it would make no difference that the property was presently zoned as residential property. He then discussed the procedure for rezoning and properties that had been rezoned.

On cross-examination this witness testified that rezoning applications had been turned down when the applicant wanted to put in a business in a residential area but there is nothing in the area to keep defendants' property from being rezoned. When asked on cross-examination if he could guarantee the rezoning of defendants' property, he stated: "I sure could. I would like to have the opportunity, * * *." And that he "wouldn't hesitate to make a contract with anybody in that area that I could to get it changed" and there was no zoning problem with defendants' land.

Defendants' other witnesses testified over plaintiff's objection, that the highest and best use of defendants' property was for commercial purposes. Their opinions as to value were based on the fair market value of the property for commercial purposes.

Plaintiff contends the trial court erred in permitting defendants' witnesses to testify as to the commercial value of the property as though commercial zoning of the property was an accomplished fact, when in fact, the property was zoned for residential purposes and could not have been used on the date of the taking for commercial purposes, and the defendants had not proven the reasonable probability that the property could be rezoned for commercial purposes.

In Lloyd v. State ex rel. Dept. of Highways, Okl., 428 P.2d 261, it was argued that on the date of taking, the property condemned was not zoned for commercial purposes and that future zoning of the property for a commercial use was very doubtful and that consequently the market value of the land should have been based primarily upon its use for residential purposes. In that case we said:

"In eminent domain proceedings there are many factors which, upon proper presentment, may be considered by the jury, or the trial judge sitting as the jury, that affect the present fair market value of the property being condemned. Evidence of the land's adaptability to a particular use, evidence of zoning regulations, and evidence of plausible and probable changes in the character of the neighborhood and zoning ordinances, are all matters of evidentiary significance. * * *.

"'* * *'".

"But these evidentiary matters are to be considered only insofar as they affect the present fair market value of the property. * * *."

All facts and circumstances which a buyer and seller would consider in connection with the purchase and sale of property are relevant and material in determining the fair market value in a condemnation proceeding. The owner of the condemned property is entitled to show, as bearing upon the question of value, any fact which the owner would naturally and probably bring to the attention of the buyer with whom he was negotiating a sale. Had defendants negotiated with a proposed buyer the sale and purchase of the property involved, the probability that the land could be rezoned would have been a factor in the negotiations. Although there might be an element of uncertainty as to whether rezoning could be accomplished, this element of uncertainty should not prevent defendants from submitting evidence con-

cerning the value of the property based on a commercial use when there is evidence tending to establish that the property could, within a reasonable probability, be rezoned.

In this connection, the trial court instructed the jury that the property was subject to the zoning ordinances until changed by the municipality or the courts, and for what purposes the property was zoned. The jury was also instructed concerning the manner in which it should consider the probability and uncertainty of changing the zoning.

▮ The jury was well aware of the fact that defendants' property was not zoned for commercial purposes. Defendants introduced testimony that a change in the zoning would be justified and there was evidence that in all probability the property could be rezoned for commercial purposes. The weight and credibility of this testimony was for the jury to determine. Lloyd v. State, supra. The trial court did not err in admitting evidence concerning the fair market value of the land based on a commercial use.

In this connection, plaintiff asked its witness G, who had previously served on the Municipal Planning Commission and the McAlester Urban Renewal Authority, that if an application had been made with the Municipal Planning Commission to change the zoning of the property from a residential to a commercial use, would it have been changed? The trial court sustained an objection to this question but it appears that the trial court would have admitted testimony offered in the same manner as offered by defendants. Thereafter, this witness was permitted to testify concerning what matters the planning commission considered when an application was made for rezoning. Plaintiff then made an offer of proof that this witness would testify if permitted to do so, that in his judgment the rezoning of defendants' property would not have been granted by the City Planning Commission for the reason there were no other commercial ventures

in the area and the area had been included in the McAlester Urban Renewal Project and was to be acquired by the McAlester Urban Renewal Authority. This proffered evidence was refused admission by the trial court and plaintiff did not pursue the matter further.

Plaintiff contends the trial court erred in refusing to permit the admission of the proffered evidence because it was introduced to rebut defendants' evidence that the property could have been rezoned and also the evidence would show there was no reasonable probability that the property could be rezoned.

Before witness G was called as a witness, plaintiff elicited from its witness C, that the highest and best use of defendants' property was for residential use. Its witness H testified that the highest and best use of the property would be for the Vo-Tech school, but in the event the school was not a reality, the alternate use would be for some form of light industry, but there were several factors which made the property unsuitable for commercial use, such as a shopping center.

Defendants made no objections to the above testimony and it is apparent from the record that witness G would have been permitted to testify concerning the same matters.

▮ The proffered evidence was not submitted to show that the facts and circumstances would not justify rezoning, or that the property could not be rezoned. The proffered evidence was directed to what the City Planning Commission would do. The fact that there were no other commercial ventures in the area would not justify a denial of rezoning if all the facts and circumstances would justify rezoning.

▮ The proffered evidence that the City Planning Commission would not rezone defendants' property because it was included in the urban renewal project could have been construed by the jury, if admitted, that by such inclusion defendants were precluded from rezoning their property even though the facts and circum-

stances would justify rezoning. Plaintiff submits no authority sustaining the proposition that a property owner is deprived of any right in a condemnation proceeding because his property has been included in an urban renewal project.

The trial court did not commit reversible error in denying admission of the proffered evidence.

Defendants' property was programed to be used for a Vo-Tech school according to the urban renewal plan. Testimony was admitted over plaintiff's objection that the location of the school might be changed and be built in Krebs. Plaintiff contends the trial court erred in admitting this testimony because it was based on hearsay.

Mr. C, Executive Director of the McAlester Urban Renewal Authority, testified on direct examination for plaintiff that the Plans for the Authority showed that defendants' property was included in a part of the area which was to be acquired for a Vo-Tech school. On cross-examination he was asked if the school was supposed to have been built in Krebs. He stated that he didn't know a thing about it, "just what I read in the paper". He said later that it "was discussed generally throughout the neighborhood and I engaged in these conversations. That is all I know". There was also evidence submitted that property could be removed that had been included in an urban renewal plan.

■ None of the testimony objected to as hearsay had any bearing on the value of the property at the time of taking, and while such evidence may have been incompetent and immaterial, the admission of such evidence does not constitute reversible error. The only issue to be resolved by the jury was the fair market value of the property at the time of taking.

Defendants introduced into evidence, over plaintiff's objection a lease rental agreement executed by defendants which was for a term of years at a specified rental and contemplated the construction of a shopping center on the property. This lease was to commence on January 1, 1971, or on the date of completion of the first unit of the shopping center, whichever came first. The lease contained an option to purchase provision but this provision was deleted from the agreement before it was admitted into evidence. The lease agreement was executed after the property had been included in the Urban Renewal Project but before the date of taking.

Plaintiff contends the trial court erred in admitting the lease agreement into the evidence and erred in admitting any evidence in regard thereto.

■ We can see no legal reason why when property is included in an Urban Renewal Project, that the owner of such property is precluded from making a reasonable use of his property until the Urban Renewal Authority finally decides to take the property.

The issues concerning the admissibility of the lease agreement was presented to the trial court, not in the presence of the jury. At this hearing, evidence was submitted showing how changes could be made in an Urban Renewal Project and that certain lands that had been included in the original plans had been removed.

The trial court seemed to be impressed with the fact that even though defendants' property may have been included in the Urban Renewal Plan, such inclusion did not constitute a taking and the Authority was not bound to take the property and could have deleted it from the plan.

In Lloyd v. State, supra, we said that the range of inquiry regarding the fair market value of condemned property rests largely in the discretion of the trial court, whose action in admitting or excluding evidence as to value will not be disturbed on appeal unless there has been an abuse of discretion.

■ In our opinion, when property is included in an Urban Renewal Project, and subsequent thereto, the owner encumbers said property, the trial court should take evidence, outside the presence of the jury, concerning the facts and circumstances

surrounding the negotiations for the encumbrance and its purposes before admitting it into evidence. Some of the facts that the trial court should consider would be: Why was the property encumbered? Did the parties take into consideration that the property was included in an Urban Renewal Project and provide for their rights and obligations if the Urban Renewal Authority did take the property? Would the encumbrances have been placed on the property if the property had not been included in an Urban Renewal Project? Was the encumbrances an arms-length transaction, or was it negotiated for the purpose of establishing some evidence as to value?

Perhaps the parties may have negotiated the lease agreement with the understanding that it was included in the Urban Renewal Project and might be subject to condemnation proceedings at a later date, but the parties had no agreement concerning their rights and obligations if in fact the property was subsequently condemned. Also, the lease agreement was executed in June, 1968, approximately thirteen months prior to taking, yet there is no evidence that the lessee attempted any construction on the premises even though rental payments were to commence "on January 1, 1971, or on the date of the completion of the opening of the first unit of said shopping center, whichever is first."

■ In our opinion, the trial court erroneously admitted into evidence the lease agreement. However, in view of the fact that the amount of damages awarded was within the range of competent evidence submitted, in fact far below the amount of damages that defendants' witnesses testified that defendants sustained, the admission into evidence of the lease agreement does not justify reversing the judgment.

Plaintiff contends the trial court erred in refusing to instruct the jury that defendants' property could not be used for commercial purposes.

■ In our opinion, when property is zoned for a particular purpose and there is evidence tending to establish a reasonable probability that the property could be rezoned, the condemnor is not entitled to an instruction which could be construed by the jury as barring considerations of increased values based on prospective changes in uses to which the land may be devoted. See People ex rel. Department of Public Works v. Donovan, (Calif.), 57 Cal.2d 346, 19 Cal.Rptr. 473, 369 P.2d 1. We hold the trial court did not err in refusing to give the requested instruction.

■ Plaintiff contends the trial court erred in failing to instruct the jury that the fair market value of the property must be determined at the time of taking and not at any time subsequent to the taking. The trial court instructed the jury the date that plaintiff appropriated defendants' property and the evidence submitted to the jury established the date of taking. The trial was conducted seventy-one days after the taking. Although plaintiff argues that failure to instruct the jury as above set forth substantially prejudiced its rights, as shown by the record and the excessive verdict, the record will not sustain their argument.

The instructions when considered together fairly submitted the issues to the jury. We find no reversible error in the instructions given or failure to instruct on a given issue. Finley v. Board of County Commissioners, Okl., 291 P.2d 333.

Plaintiff contends the judgment is so excessive as to per se indicate passion, prejudice and a consideration of improper factors in determining the fair market value of defendants' property.

■ Evidence of the land's adaptability to a particular use, evidence of zoning regulations and evidence of plausible and probable changes in the character of the neighborhood and zoning ordinances, were matters of evidentiary significance for the jury to consider in determining the fair market value of the property. Lloyd v. State, supra. Although there was a great disparity between the values placed on the property by the witnesses, the judg-

ment is supported by competent evidence. The evidence submitted on behalf of defendants far exceeded the jury verdict and judgment rendered thereon. Whether the judgment is in accord with the "greatest weight of competent evidence" is not a proper subject for review. Allen v. City of Tulsa, Okl., 345 P.2d 443.

Judgment affirmed.

BERRY, C. J., DAVISON, V. C. J., AND WILLIAMS, HODGES, LAVENDER McINERNEY and BARNES, JJ., concur.