2007 OK CIV APP 105

STATE of Oklahoma, ex rel. DEPART-
MENT OF TRANSPORTATION,
Appellant,

v.

LAMAR CENTRAL OUTDOOR, INC., an
Oklahoma corporation, Appellee,

and

Sober Brothers, Inc., an Oklahoma
corporation, Interested Party.

No. 103,948.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Aug. 30, 2007.

Kelly F. Monaghan, Lori Gilliard, Holloway & Monaghan, Tulsa, OK, for State of Oklahoma, ex rel. Department of Transportation.

William H. Hickman, Brian R. Matula, Moricoli, Matula, Schovanec & Hickman, Oklahoma City, OK, for Lamar Central Outdoor, Inc.

JERRY L. GOODMAN, Judge.

¶1 State of Oklahoma, *ex rel.* Department of Transportation (ODOT), appeals the trial court's October 23, 2006, order denying their exception to the August 17, 2005, Report of Commissioners. Based upon our review of the facts and applicable law, we reverse and remand for further proceedings.

## FACTS

¶2 On June 8, 2005, ODOT filed a petition pursuant to 69 O.S.2001, § 1203 seeking to acquire 2.26 acres of real property in Kay County, Oklahoma for the purpose of making improvements to the State Transportation System. ODOT's petition alleged the acquisition would be in fee simple, the Defendants, Sober Brothers, Inc. (Sober) and Lamar Central Outdoor, Inc. (Lamar) (collectively "Defendants"), own or claim some interest in the property, and that a reasonable effort to secure the purchase by agreement was made but that the parties had failed to reach an agreement.[1]

¶3 Located on the real property is an outdoor advertising billboard owned by Lamar. The billboard was erected and is operated and maintained on the real property pursuant to a lease agreement between Sober and Lamar. ODOT's acquisition of the real property mandates the removal of the billboard.

¶4 On July 8, 2005, the trial court entered an order appointing three Commissioners. The trial court instructed the Commissioners to determine the "just compensation for the land and improvements taken and for damages to the remaining property." The court further instructed them to determine the value of the billboard improvement (Billboard) and the leasehold interest (Leasehold) in the land (for purposes of this appeal, collectively "Property Interests"). In valuing the real property and Property Interests, the instructions set forth three valuation methods: 1) cost approach, 2) income approach, and 3) comparable sales. The instructions further provided the Commissioners may consider the terms of the lease and the affect a state-issued permit may have on the value of the Leasehold.

¶5 On August 17, 2005, the Commissioners filed their report stating Defendants were entitled to $58,000.00 as just compensation for the taken property.[2] On September 15, 2005, ODOT filed an exception to the Commissioners' report asserting the instructions were contrary to law. More specifically, ODOT asserted the instructions 1) improperly required the permit's value to be included in the Leasehold's value, 2) incorrectly identified the Billboard as real property and as a result, an incorrect valuation method was used, 3) the "income multiplier approach" is not recognized in Oklahoma, 4) business prof-

---

1. Sober Brothers, Inc. is not a party to this appeal.

2. Since there are more than one interest owners, the property was appraised as a single estate. *See Grand River Dam Auth. v. Gray,* 1943 OK 219, ¶3, 192 Okla. 547, 138 P.2d 100, 102

(Where there are multiple interest owners, the property to be condemned should first be appraised as a single unit "as though the property belonged to one person," with the total award apportioned to the various interests at a later time). This is frequently referred to as the "unit rule."

its are not compensable, and 5) the instructions did not state the proper valuation method for the Leasehold.

¶6 A hearing was held on October 13, 2006. Commissioner Gary Bilger testified the Commissioners used the income approach to determine the just compensation Defendants were entitled to and that they followed the court's instructions faithfully and to the best of their ability. Charles Floyd, a professor of real estate and a recognized expert in the valuation method for outdoor advertising billboards, agreed the three valuation methods set forth in the instructions were generally accepted methods, including the income approach. However, he testified that with the income approach, the income has to be to the property, not to a business located on the property. At the close of ODOT's evidence, the trial court granted Lamar's demur. An order was entered on October 23, 2006, memorializing the court's decision. ODOT appeals.

## STANDARD OF REVIEW

¶7 Questions of law are reviewed under a de novo standard, without deference to the trial court's legal rulings. *Oklahoma Educ. Ass'n v. State ex rel. Oklahoma Legislature,* 2007 OK 30, ¶2, 158 P.3d 1058, 1061 (citations omitted); *Conoco, Inc. v. Agrico Chem. Co.,* 2004 OK 83, ¶9, 115 P.3d 829, 833 (citations omitted).

## ANALYSIS

¶8 The Oklahoma Constitution provides in Article II, Section 24 that "private property shall not be taken or damaged for public use without just compensation. Just compensation shall mean the value of the property taken, and in addition, any injury to any part of the property not taken." "In condemnation proceedings, the sole issue is the fair market value of the land taken and damage to remaining portion of land, if any, ..." *Eberle v. State of Oklahoma ex rel. Dept. of Highways,* 1963 OK 224, ¶14, 385 P.2d 868, 871 (citing *Oklahoma Ry. Co. v. State,* 1951 OK 323, 237 P.2d 878); *see also Oklahoma Turnpike Auth. v. Daniel,* 1965 OK 7, 398 P.2d 515. Fair market value is the price at which property would change hands

between a willing buyer and seller, neither being under any compulsion to consummate the sale. *Western Farmer Elect. Coop. v. Enis,* 1999 OK CIV APP 111, 993 P.2d 787. "[I]n ascertaining [fair market value between willing buyers and sellers,] there should be taken into account all considerations that fairly might be brought forward and reasonably be given substantial weight in such bargaining." *Id.* at ¶12, 993 P.2d at 792 (citations omitted).

¶9 A condemnation action brought to obtain private property for public use is a special proceeding strictly controlled by the Constitution and statutes prescribed by the Legislature. *See Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc.,* 1997 OK 78, ¶16, 941 P.2d 995, 999. Accordingly, the action must be carried out in accordance with Constitutional mandates and legislatively prescribed procedure. *Id.,* (citing *Carter v. City of Oklahoma City,* 1993 OK 134, 862 P.2d 77). The procedure for ODOT's acquisition of private land by condemnation is found at 69 O.S.2001, § 1203 et seq. Pursuant to § 1203(c), after a condemnation action has been filed, the court appoints "three disinterested freeholders" as Commissioners. The Commissioners are directed to "inspect the real property and consider the injury which the owner(s) may sustain by reason of the condemnation, and they shall assess the just compensation to which the owner(s) is entitled; and they shall ... make a report in writing ... setting forth the ... just compensation for the property taken...." *Id.*

¶10 In the present case, the trial court directed the Commissioners to determine the fair market value of Lamar's Property Interests by utilizing any or all of three (3) appraisal methods: the cost approach, the income approach, or the comparable sales approach. ODOT asserts the court erred in instructing the Commissioners on the proper valuation methods for determining the fair market value for Lamar's Billboard and Leasehold Interests and in permitting the Commissioners to consider the affect of the state-issued permit and Lamar's business profits.

¶ 11 It is undisputed the Commissioners applied the income approach to value the Property Interests at issue. The instruction provides, in relevant part:

(A) You should determine the amount of money that constitutes just compensation for the land and improvement taken and for damages to the remaining property. You are also to determine the value of the billboard improvement taken (i.e., the sign and its foundation)(the "Billboard") which are "trade fixtures," and the leasehold interest in the land between the sign owner and the landowners (the "Leasehold").

. . .

(E) The term "Market Value," as the same is used herein, means the amount which a purchaser, willing but not obligated to buy the property, would pay to the owner, willing but not obligated to sell the property. In determining Market Value you may choose to use either or a combination of the cost approach, the comparable sales approach or the income approach.

(F) In valuing the Billboard and Leasehold you may consider the terms of the Leaseholds when making your valuation, including the length of time remaining on each Lease and the possibility that the Lease may or may not be extended. In your consideration of the Leaseholds, you may also consider the affect any permits may have on the value of Leaseholds, including [Lamar's] ability to either utilize or not utilize these permits for the construction and operation of a billboard improvement at a new location. . . .

. . .

(2) If you choose to employ the "income approach" method for valuation, then [owners] should be awarded the rental income potential of the property. You should determine the anticipated net income derived from the Billboards and Leaseholds (i.e., the earnings before interest, taxes, or depreciation) and adjust this value to a present value figure. The projected, future income stream should be converted to present value using an appropriate capitalization rate.

¶ 12 With respect to the income approach, the trial court set forth specific instructions directing the Commissioners to award certain compensation. In addition, the court instructed the Commissioners on how they should determine the fair market value for Lamar's Billboard and Leasehold Interest. This was error.

■ ¶ 13 Furthermore, the trial court improperly inserted itself into the responsibilities rightly belonging to the Commissioners. It is the Commissioners' duty to inspect the property, consider the injury, and assess just compensation. Section 1203 is devoid of any restrictive language suggesting the Legislature intended to limit or restrict how just compensation is determined. "It must be remembered that the purpose of any condemnation value rule is simply to put the owner 'in as good (a) position pecuniarily [*sic*] as he would have occupied if his property had not been taken.'" *City of Tulsa v. Mingo Sch. Dist. No. 16*, 1976 OK CIV APP 27, ¶ 32, 559 P.2d 487, 494 (citing *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943)).

¶ 14 In *State of Oklahoma ex rel. Dept. of Transp. v. Little*, 2004 OK 74, 100 P.3d 707, the Oklahoma Supreme Court stated:

This court should never be unmindful that a landowner is entitled to be compensated fully when the latter's property is taken by the government in the exercise of the eminent domain power. The mandate of both the state and federal constitutions strongly supports full indemnification by just compensation. The command requires that the condemnee be placed as fully as possible in the same position as that occupied before the government's taking.

*Id.* at ¶ 23, 100 P.3d at 718.

■ ¶ 15 By instructing the Commissioners on three valuation methods, by instructing the Commissioners to award only certain compensation, and by instructing the Commissioners on how to determine the fair market value of the Property Interests, the trial court impermissibly narrowed the scope of the Commissioners' duty when determin-

ing just compensation. The trial court excluded other possible recognized and accepted methods of valuation which could have been used to arrive at just compensation. The trial court may not restrict the Commissioners' mandated duty to set just compensation by limiting or restricting how the Commissioners determine the fair market value of the property interests at issue. The Commissioners may employ any recognized appraisal method.

¶ 16 The Commissioners may further consider any relevant factor that may reasonably affect the fair market value in reaching their determination of just compensation. *See McAlester Urban Renewal Auth. v. Lorince*, 1972 OK 109, 499 P.2d 925 ( ... many factors may be considered that affect the present fair market value of the property being condemned. These evidentiary matters are to be considered only insofar as they affect the present fair market value of the property.) (citations omitted); *Western Farmers Elect. Coop. v. Enis*, 1999 OK CIV APP 111, 993 P.2d 787 (The "considerations" that go into fair market value include "any factors which a reasonably prudent buyer would consider before purchasing property," and "all elements reasonably affecting value.") (citations omitted).

¶ 17 Accordingly, to ensure a condemnee is fully compensated for the taking of his property, the Commissioners may use any recognized appraisal method and may further consider any relevant factor reasonably affecting the fair market value of the property to be condemned. Accordingly, the trial court's instructions, which impermissibly limited and restricted the Commissioners' range of inquiry into the fair market value of the property to be condemned, were erroneous. The October 23, 2006, order denying ODOT's exception to the Commissioners' report is therefore reversed, the August 17, 2005, Commissioners' report is vacated in its entirety, and the matter remanded for further proceedings consistent with this opinion.

¶ 18 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

GABBARD, P.J., and REIF, J., concur.