2014 OK 47

**STATE of Oklahoma, ex rel. DEPARTMENT OF TRANSPORTATION, Appellant,**

v.

**LAMAR ADVERTISING OF OKLAHOMA, INC., an Oklahoma domestic corporation; Lamar Central Outdoor, Inc., Successor in interest to Chancellor Media Whiteco, a Delaware Corporation, Appellees.**

Nos. 110896, 111108.

Supreme Court of Oklahoma.

June 3, 2014.

Rehearing Denied Sept. 22, 2014.

the sign. ODOT previously acquired the real property on which the sign was located as part of a highway improvement project to Interstate 40 and, as such, removal of the sign was necessary.

¶2 Lamar erected the sign on the underlying real property pursuant to a written lease agreement with the owners of the land. Lamar has since removed and kept possession of the sign. ODOT argues that the sign is a trade fixture and that trade fixtures are personal property. As such, ODOT claims Lamar is only entitled to the depreciated reproduction costs of the sign or the costs associated with the sign's relocation. Conversely, Lamar argues that the sign's label of personal or real property is irrelevant to this case as the only criteria is fair market value of the sign and its related interests. ODOT asserts that Lamar's method of valuation improperly allows for the recovery of lost business income and profits. Lamar valued its property interests at $429,000 while ODOT valued the property significantly less at roughly $60,000.

¶3 Pursuant to 69 O.S.2011, § 1203(c). the trial court selected three disinterested commissioners to assess the just compensation to which Lamar was entitled. The Commissioners were directed to "inspect the real property and consider the injury which the owner(s) may sustain by reason of the condemnation, and they shall assess the just compensation to which the owner(s) is entitled; and they shall ... make a report in writing ... setting forth the ... just compensation for the property taken...." *Id.* On July 23, 2008, the commissioners issued a report finding that Lamar was entitled to $212,500 for the property interests acquired by ODOT through eminent domain. ODOT demanded a jury trial.

Kelly F. Monaghan and Lori Gilliard, Holloway & Monaghan, Tulsa, Oklahoma, for Appellant.

William H. Hickman and Brad S. Clark, Hickman Law Group, Oklahoma City, Oklahoma, for Appellees.

WINCHESTER, J.

¶1 Plaintiff/Appellant, the State of Oklahoma, ex rel. Department of Transportation ("ODOT"), filed this condemnation proceeding against Lamar Advertising of Oklahoma Inc., and Lamar Central Outdoor, Inc. (collectively "Lamar"), for the removal of an outdoor advertising sign and the acquisition of Lamar's leasehold interest associated with

¶4 At the conclusion of trial, the jury returned a verdict awarding Lamar $206,000 in just compensation for its interests. Lamar filed a motion for new trial and a motion to reconsider, both of which the trial court denied. Both parties appealed and we have retained and consolidated the matters.

¶5 ODOT maintains that based on Oklahoma law the sign is personal property. Ac-

cordingly, ODOT argues just compensation should be determined based on the cost of relocating the sign and only in the event the sign cannot be relocated the fair market value of the sign itself. Lamar filed Motions in Limine to exclude evidence regarding relocation of the sign, claiming relocation was not an option[1], and to prohibit evidence that the sign was personal property. Both Motions were sustained by the trial court and ODOT claims the rulings were in error.

¶ 6 Prior to trial, ODOT filed a motion for partial summary judgment seeking a determination that pursuant to Oklahoma law, the sign in question was a trade fixture and trade fixtures are personal property under Oklahoma law. ODOT also filed a Daubert Motion to exclude the testimony of Lamar's expert, Paul Wright, arguing that he erroneously valued the sign as if it were real property. ODOT further urges this Court to reject the use of the gross rent multiplier, or similar valuation methods used by Lamar's expert, claiming that such methods improperly award compensation for lost business profits relating to the outdoor advertising sign business. The trial court denied ODOT's motion for partial summary judgment as well as the Daubert motion.

¶ 7 Conversely, Lamar claims its constitutional rights were violated by having the burden of proof of valuation on it instead of ODOT, the party demanding the jury trial. Lamar also filed a Daubert motion seeking to exclude ODOT's expert's opinions as failing to adequately assess the fair market value of the sign. The trial court denied Lamar's Daubert motion.

## STANDARD OF REVIEW

¶ 8 A condemnation proceeding is a special proceeding for the taking of private property for public use and must be carried out in accordance with legislatively-proscribed procedure. *See Gaylord v. State ex re. Dept. of Highways*, 1975 OK 63, 540 P.2d 558, 560; *Bd. Of County Com'rs of Creek Co. v. Casteel*, 1974 OK 31, 522 P.2d 608, 610. On appeal in eminent domain proceedings, the verdict of the jury may be set aside only when it manifestly appears that it is unjust and not supported by any competent evidence. *Denver, W. & M. Ry. Co. v. Adkinson*, 1911 OK 18, 119 P. 247. An appellate court's duty is to ensure that there is "competent evidence reasonably tending to support the verdict of the jury and no prejudicial errors are shown in the trial court's instructions to the jury or on legal questions presented during trial." *Florafax Intern., Inc. v. GTE Market Resources Inc.*, 1997 OK 7, ¶ 3, 933 P.2d 282, 287.

¶ 9 The trial court is vested with wide discretion in determining what information it receives in a condemnation proceeding. *See, e.g., State ex rel. Dept. of Transp. v. Little*, 2004 OK 74, ¶ 11, 100 P.3d 707, 712 (evaluation of property value left largely to discretion of trial court). Any "competent evidence of matters, not merely speculative, which would be considered by a prospective vendor or purchaser, or which tend to enhance or depreciate the value of the property, is admissible." *City of Enid. v. Moyers*, 1945 OK 281, ¶ 5, 165 P.2d 818, 820. The "admissibility of evidence of value in condemnation cases is more largely within the trial court's discretion than is the determination of other issues, so that error predicated upon the exclusion of certain evidence will not be sustained except in cases of manifest error." *Finley v. Bd. of County Comm.*, 1955 OK 321, ¶ 13, 291 P.2d at 339.

## DISCUSSION

¶ 10 In 1965, Congress enacted the Highway Beautification Act (HBA) which provided for, among other things, the regulation of outdoor advertising signs along the interstate and federal aid primary highways. *See* 23 U.S.C. §§ 131, *et seq.* Thereafter, Oklahoma adopted its own version of the HBA entitled the Highway Advertising Control Act. *See* 69 O.S §§ 1271, *et. seq.* The Legislature determined that it was "in the public interest to control the size, number, spacing, lighting, type and location" of outdoor advertising

---

1. Lamar contends that Oklahoma City passed a complete ban on the construction of new billboards in the Downtown Scenic Area where the newly constructed I-40 is located, prohibiting the relocation of the sign.

structures in certain areas. 69 O.S.2011, § 1271. In addition, local municipalities often impose their own restrictions. With all of these regulations, the legal sites for the erection of outdoor advertising signs are dwindling.

¶ 11 The Fifth Amendment to the U.S. Constitution, and Article 2, Section 24 of the Oklahoma Constitution, both provide that the government shall not take private property for public use without just compensation. Oklahoma case law provides that property owners are entitled to just compensation for their property interests when the government acquires such property through its eminent domain powers and "just compensation shall mean the value of the property taken." *State of Oklahoma, ex rel. Dep't of Transportation v. Norman Industrial Development Corp.*, 2001 OK 72, 41 P.3d 960; OKLA. CONST. Art. 2, § 24.

¶ 12 Property owners must be placed as fully as possible in the same position they occupied before the government's taking. *State ex rel. Dep't of Transp. v. Little*, 2004 OK 74, ¶ 23, 100 P.3d 707, 718; *Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks*, 1994 OK 9, ¶ 12, 870 P.2d 762, 766. Further, all presumptions must favor the landowner, not the condemnor, and constitutional eminent domain statutes must be strictly construed in the landowner's favor. *See State ex rel. Department of Transportation v. Sissom*, 2009 OK 40, ¶ 9, 236 P.3d 49, 51, citing *Public Serv. Co. v. B. Willis, CPA, Inc.*, 1997 OK 78, ¶ 16, 941 P.2d 995, 999.

¶ 13 Where billboards are part of a taking in a condemnation proceeding, Oklahoma law provides that the just compensation to a sign owner must be based on fair market value for the "outdoor advertising and property rights pertaining thereto." 69 O.S.2011, § 1280(A). The Act further specifies that outdoor advertising "is a trade fixture, and owners shall be awarded just and fair compensation for its taking." 69 O.S. 2011 § 1280(B). Although trade fixtures are often treated like personal property between a lessee and lessor, in condemnation proceedings they are generally treated as real property.

¶ 14 Pursuant to 27 O.S.2011 § 14. "[w]here any interest in real property is acquired, an equal interest shall be acquired in all buildings, structures or other improvements located upon the real property." The statute goes on to provide:

> For the purpose of determining the just compensation to be paid for any building, structure or other improvement required to be acquired as by subsection A of this section, such building, structure or other improvement shall be deemed to be a part of the real property to be acquired notwithstanding the right or obligation of a tenant, as against the owner of any other interest in the real property, to remove such building, structure or improvement at the expiration of his term, and the fair market value which such building, structure or improvement contributes to the fair market value of the real property to be acquired or the fair market value of such building, structure or improvement for removal from the real property, whichever is greater, shall be paid to the tenant therefor.

27 O.S. § 14. *See also Almota Farmers Elevator & Warehouse Co. v. U.S.*, 409 U.S. 470, 477 n. 5, 93 S.Ct. 791, 796 n. 5 [35 L.Ed.2d 1] ("if the. fixtures are attached to the real estate, they must be treated as real estate in determining the total award.") Because an outdoor advertising sign falls under the category of a "structure or other improvement," further designation as personal or real property is unnecessary as the billboard owner must be provided fair market value regardless of the characterization of the property.

¶ 15 Oklahoma case law has consistently recognized that property interests entitled to compensation include every valuable interest that can be enjoyed and recognized as property, including leasehold interests and personal property. *Southern Kansas Ry. Co. v. City of Okla. City*, 1902 OK 63, 69 P. 1050 (syllabus 1). *See also Graham v. City of Duncan*, 1960 OK 149, 354 P.2d 458 (property entitled to compensation includes easements, personal property and a tenant's

crops). Property taken through eminent domain and for which just compensation must be made "includes not only the soil but everything attached to it, whether attached by the course of nature, as trees, herbage, water, mines, and minerals, or by the hand of man, as buildings, fences, or other structures...." *Wright v. State ex rel. Dept. of Highways*, 1951 OK 119, ¶ 11, 230 P.2d 462, 463 (quoting 29 C.J.S. § 66, p. 855). Accordingly, Lamar is entitled to the fair market value of the property interests taken, whether real or personal.

¶ 16 In condemnation proceedings, the sole issue is the fair market value of the property taken and damage to the remaining property, if any. *Eberle v. State of Oklahoma ex rel. Dept. of Highways*, 1963 OK 224, ¶ 14, 385 P.2d 868, 871. There is no rigid formula for determining fair market value as a measure of just compensation. Instead, all reasonable considerations that might impact the fair market value of a sign's property interests should be reviewed. *McAlester Urban Renewal Auth. v. Lorince*, 1972 OK 109, 499 P.2d 925.

¶ 17 There are three standard property appraisal approaches: the cost approach, the income approach and the comparable sales approach. *Liddell v. Heavner*, 2008 OK 6, ¶ 20, 180 P.3d 1191. Where circumstances warrant, however, other recognized approaches or variations thereof can be employed. *Id.* In the present case, ODOT's expert used a cost approach analysis to value Lamar's interests at $60,094. This amount included $10,900 for a positive leasehold position and $49,194 for actual sign value after depreciation. Conversely, Lamar's expert used the gross income multiplier method, a method that he testified is commonly utilized by buyers and sellers in the market of billboard advertising. Under this method, the expert determined that Lamar's fair market value loss was $410,184.[2]

¶ 18 Fair market value is the amount of money which a purchaser willing, but not obliged, to buy the property would pay to an owner willing, but not obliged, to sell it. *See Grand Hydro v. Grand River Dam Auth.*, 1943 OK 158, ¶ 9, 139 P.2d 798; OUJI–Civ 25.5. When measuring the fair market value of real property in a condemnation proceeding, courts may not restrict how the determination of fair market value is derived to any particular method for appraisal. *See, e.g., State of Okla. ex rel. Dept. of Transp. v. Lamar Central Outdoor, Inc., and Sober Bros., Inc.*, 2007 OK CIV APP 105, 170 P.3d 551 (trial court may not restrict how fair market value is determined in billboard valuation: any recognized appraisal method may be employed); *Sill Corp. v. U.S.*, 343 F.2d 411, 416 (10th Cir.1965)(applying Okla. law)(no particular method for determining fair market value as a measure of just compensation should be espoused; instead, allowing the use of a number of methods and factors). In *Sill*, the court reasoned that fair market value may be measured using comparable sales, reproduction costs, capitalization of net income or any interaction of such determinants. *Sill Corp. v. U.S.*, 343 F.2d 411, 416 (10th Cir.1965).

¶ 19 In accordance with this guidance, the trial court first instructed the commissioners to "employ all recognized appraisal methods" as well as "any other relevant factors reasonably affecting the fair market value of the property interest in reaching the determination of just compensation." The jury was later given the same instructions.

¶ 20 ODOT contends that Lamar's expert should not consider income from Lamar's sign face rentals in determining the sign site's fair market value. However, in *State ex rel. Dept. of Highways v. Robb*, 1969 OK 47, ¶ 11, 454 P.2d 313, 317, the Court held that "within the exercise of sound judicial discretion by the trial court evidence concerning the income and profits from a business being conducted on the property

---

2. Lamar's expert testified that many factors went into his valuation, including the location of the sign, the gross annual rent of the sign face, what a willing buyer would pay for the sign, the size of the sign, the circulation, the traffic volume and the sign's overhead. He then came up with a multiplier of six by analyzing the sale of similar billboards. He also utilized a second approach, the cash flow multiplier method, in which he determined the fair market value to be approximately $429,000.

involved is admissible, ... as bearing upon the question of the fair market value of such property, although it is not admissible for the purpose of establishing a separate item of damages for loss of business profits." *See also,* 7A Nichols on Eminent Domain § G9A.04(4)(c)(ii) ("When the business income or loss relates to market value, or it is otherwise demonstrated that such evidence is germane to a depreciation in market value after a taking, it may be admissible relative to market value, but the loss is not recoverable as a separate component of market value or severance damages.").

¶ 21 Likewise, in *Finley v. Bd. of County Commissioners,* 1955 OK 321, ¶ 13, 291 P.2d 333, 339, the Court recognized that "evidence is admissible as to gross sales and the net profits of a business to aid the jury in determining the depreciation in the market value of the property taken or damaged." The Court acknowledged in *Finley* that the trial court admitted a "wide range of evidence" relative to the value of the property and that the testifying experts considered the income from the property in arriving at their conclusions as to the market value. *Id.* All factors that may be given weight in the negotiation of a market transaction are factors that affect the determination of fair market value. We agree that income generated from the rental of the sign's face can be a relevant factor for consideration in the determination of fair market value.[3]

¶ 22 The property taken from Lamar is a sign site that includes the billboard structure as well as the real property leasehold for a specific location identified by an outdoor advertising permit. Lamar's expert testified that the existence of a sign structure at a specific location is a factor that a buyer or seller in the marketplace would consider in valuing a sign site. ODOT's method of valuation would value all signs the same regardless of sign site location. This approach fails to take into account the sign's fair market value as a willing buyer would likely pay more for a sign on a busy highway than it would for a sign on a remote, country road. Lamar is entitled to full indemnification by just compensation which includes an evaluation of its fair market value.

■ ¶ 23 As for the exclusion of evidence relating to the sign's relocation options, Lamar argued it could not relocate its sign to a similarly situated site and the trial court agreed. Taking into account the parties' witness testimony and evidence, the trial court determined prior to trial that evidence of relocation should not be submitted in this case. There is ample evidence in the record for the court to have ruled that relocation was not a possibility herein and, therefore, should not be considered. While evidence of relocation may be relevant in another case of this nature, we do not find the trial court abused his broad discretion in excluding evidence of the possibility of relocation in this case. *Finley v. Bd. of County Commissioners,* 1955 OK 321, ¶ 13, 291 P.2d 333, 339.

■ ¶ 24 On appeal, Lamar also argues it shouldn't have the burden of proof regarding the determination of fair market value because it did not demand the jury trial, ODOT did. However, Oklahoma law has long provided that once the condemnor proves the validity of a taking, the burden shifts to the

---

3. A majority of states concur with the conclusion that advertising income generated from a billboard face that cannot be relocated should be considered in valuing leasehold interests in order to ensure the sign owner will be justly compensated. See 8A *Nichols on Eminent Domain,* § 23.04[4] (West 2005). *See also, Nat'l Adv. Co. v. State, Dept. of Transp.,* 116 Nev. 107, 993 P.2d 62 (2000) (advertising income appropriately considered in valuing condemned leasehold interests, noting importance of location); *Lamar Corp. v. Commonwealth Transp. Comm'r,* 262 Va. 375, 552 S.E.2d 61 (2001) (evidence of income admissible because intrinsic to land, not business profit); *National Advertising v. State, DOT,* 611 So.2d 566, 568–70 (Fla.Dist.App.1992) (evidence of rental income is relevant to value of leasehold interest); *State v. Obie Outdoor Advertising,* 9 Wash.App. 943, 516 P.2d 233 (1973)(rental income appropriately considered in valuing property where sign could not be relocated) *City of Scottsdale v. Eller Outdoor Advertising,* 119 Ariz. 86, 579 P.2d 590 (App.1978) (valuation based on rental income appropriate for unique billboard location); *Lamar Advantage Holding Co., Inc. v. Arkansas State Highway Comm'n,* 369 Ark. 295, 253 S.W.3d 914 (2007) (income primarily function of unique location); *DURA v. Berglund–Cherne,* 193 Colo. 562, 568 P.2d 478 (1977) (rental income generated by uniqueness of land appropriate consideration).

condemnee to prove the value of the property in condemnation proceedings. *See Nichols v. Oklahoma City,* 1945 OK 66, ¶ 7, 157 P.2d 174, 175. *See also, Western Farmers Electric Co-op. v. Rowlett,* 1955 OK 254, ¶ 0, 288 P.2d 726 (defendant/condemnee has burden of proof in establishing their damages); *Curtis v. WFEC Railroad Co.,* 2000 OK 26, ¶ 17, 1 P.3d 996 (condemnee bears burden of establishing damages).

¶ 25 In *Nichols,* the condemnor similarly appealed the award of the commissioners and, at trial, received an award slightly less than the commissioners' award. The condemnee complained of error in placing the burden of proof on him at trial. The *Nichols* court rejected the condemnee's argument finding that the burden was properly placed on the condemnee as per the general rule. *Nichols v. Oklahoma City,* 1945 OK 66, ¶ 7, 157 P.2d 174, 175. Accordingly, the burden of proof as to valuation properly rested with Lamar.

¶ 26 Lamar further argues that it has been denied due process because of the undue burden to secure a jury award in excess of ten percent of the commissioners' award in order to seek attorneys' fees when ODOT is the party that demanded the jury trial. Pursuant to 27 O.S.2011 § 11(3), a property owner may be reimbursed for "reasonable attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings" when the jury's award exceeds the court-appointed commissioners' award by ten percent. Here, the jury returned an award for slightly less than the commissioners' award. Lamar argues that it should be allowed to recover its fees because ODOT demanded the jury trial and it would be unfair to make Lamar responsible for such costs.

¶ 27 In condemnation proceedings, there is no common law right to an award of attorneys' fees. Every party is responsible for its own litigation costs unless provided otherwise by statute. *State ex rel.*

*Dept. of Transp. v. Carter,* 2005 OK 7, ¶ 6, 107 P.3d 593, 594. Section 11 of title 27 is such a statute and it shifts the attorneys' fees obligation to the condemnor where the jury award exceeds the commissioners' award by ten percent or greater. *Oklahoma Turnpike Auth. v. New,* 1993 OK 42. ¶ 6, 853 P.2d 765, 766. Nevertheless, because the statute, by its express terms, is only applicable where a jury award exceeds the commissioners' award by ten percent, it is not triggered in this case and Lamar is not entitled to its fees regardless of which party brought this action.[4]

## CONCLUSION

¶ 28 This court will not substitute its judgment for that of a jury in matters of damages to be awarded for the condemnation of property for a public use, nor will it disturb the verdict of a jury if supported by any competent evidence. *Eberle v. State of Oklahoma ex rel. Department of Highways,* 1963 OK 224, 385 P.2d 868. We find there was competent evidence to support the verdict of the jury as to the amount of damages awarded Lamar. As such, we find no grounds for reversing the judgment of the lower court. The parties' requests for oral argument are denied.

AFFIRMED.

ALL JUSTICES CONCUR.

---

4. A similar due process argument was rejected by the Court in *Root v. Kamo Elec. Co-op., Inc.,* 1985 OK 8, 699 P.2d 1083. In *Kamo,* the Court addressed a similar statute which required the jury award to exceed the commissioners' award by ten percent to trigger an award of attorneys' fees. The *Kamo* Court found "the classification as to the qualification for the award to be reasonable." *Id.* at ¶ 39.