JOHN B. TURNER, Chief Justice.
JESSE J. DUNN,
SAMUEL W. HAYES,
MATTHEW J. KANE,
R. L. WILLIAMS,
} Justices.

### DENVER, W. & M. RY. CO. v. ADKINSON.

No. 722, Opinion Filed January 10, 1911.

1.  APPEAL AND ERROR—Signing, Settling and Filing Case-Made
    —Time. A party against whom a judgment is rendered on May
    22, 1908, and who, within time properly extended, served on his
    adversary a case-made on October 1, 1908, which on the same
    day was returned with a waiver of suggestion of amendments,
    will not be deemed to have abandoned his appeal where he has
    the said case-made duly signed and settled on proper notice on
    December 12, 1908.
        a.  Nor will he be held to have abandoned his appeal by
    reason of the fact that the said case-made was not filed by him
    with the papers in the case until February 9, 1909.
        b.  The word "thereupon," as used in section 6075, Comp. Laws
    of Okla. 1909, in the clause providing that "the case so settled
    and made shall thereupon be filed with the papers in the case,"
    means after being so settled and signed, and does not in this
    connection necessarily mean "immediately."

2.  INDIANS—Allotments—Ejectment—Certificate as Evidence of
    Title. Where, in an action of ejectment by an allottee of the
    Cherokee Tribe of Indians, plaintiff in support of her title shows
    Vol. 28—1

that the land involved was allotted to her and there is no denial of the said allotment and plaintiff's claim of right, title, and possession is based upon her allotment certificate, the pleading and proof of the same is sufficient to place the burden upon a defendant who controverts plaintiff's rights thereunder.

3.   EMINENT DOMAIN—Railroad Right of Way—Indian Lands—Compensation—Ejectment by Allottee. Under section 15 of an act of Congress, entitled, "An Act to grant the right of way through the Oklahoma Territory and the Indian Territory to the Enid and Anadarko Railway Co., and for other purposes," approved February 28. 1902 (32 Stat. L., p. 43), before a railway company exercising the right of eminent domain thereunder may take or condemn lands, full compensation for the same and for all damages done by the construction of the road or the taking of the lands must be first made to the individual owner, occupant, or allottee of such lands or to the tribe or nation through or in which the same is situated, and where possession is taken without such payment, and the land is subsequently allotted, the allottee may maintain ejectment to secure possession.

4.   APPEAL AND ERROR—Review—Verdict—Insufficiency of Evidence. Where a verdict for damages is found by a jury which is unsupported by any evidence, the same will be reversed and set aside on appeal.

(Syllabus by the Court.)

*Error from District Court, Rogers County; T. L. Brown, Judge.*

Ejectment by Ella M. Adkinson by her next friend, J. M. Adkinson, against the Denver, Wichita & Memphis Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*E. G. Wilson,* for plaintiff in error.
*W. H. Kornegay,* for defendant in error.

DUNN, C. J.   This case presents error from the district court of Rogers county, and was an action of ejectment brought under the laws in force in the Indian Territory prior to statehood.   The defendant in error, as plaintiff in the court below, brought her action to recover the possession of a strip of land twenty-five feet wide, running through a tract of land which was allotted to her as a member of the Cherokee Tribe of Indians. It is made to appear by the petition that on the 10th day of September, 1906, at the time of the allotment in question, the de-

fendant, the Denver Wichita & Memphis Railway Company, was unlawfully and without right occupying a portion of said allotted land, consisting of the strip referred to which ran diagonally through plaintiff's allotment from a point about fifty feet west of the southeast corner to a point about forty feet east of the northwest corner, which land was known as the right of way of the defendant railway company. Plaintiff prayed to recover possession of said tract of land and for damages. The certificate of allotment was set out and pleaded at length in plaintiff's petition. To this petition the defendant filed a demurrer which was by the court overruled, to which exception was saved, whereupon defendant answered, admitting the issuance to plaintiff of the allotment certificate, but denied that she was entitled as against the defendant to the land sued for. It further pleaded that as a railway company it was entitled to all the benefits and privileges provided for by an act of Congress approved February 28, 1902, relating to the condemnation by railroads of right of ways through Oklahoma and Indian Territories, and that, acting under the terms of the said act, the right of way here involved was legally condemned and that the said strip of land was being used for railroad purposes at the time plaintiff took the land, and that she took with notice of these rights. Further answering, defendant denied that plaintiff was the owner and entitled to the immediate possession of the premises described, or that she was entitled to damages for its retention. A trial was had to a jury, which, under a peremptory instruction by the court on the evidence submitted, returned a verdict for plaintiff and assessed her damages at $150. Motion for new trial was filed and overruled, and the case has been regularly filed in this court for review.

A preliminary question to the consideration of the case on its merits is presented by counsel for defendant in error in his brief, wherein it is contended that this court is without jurisdiction to consider the case by reason of the fact that counsel for

plaintiff in error abandoned his appeal and that the action should be dismissed. The basis for this claim is found in the following state of facts: The order and judgment of the court rendered herein was of the date of May 22, 1908, and defendant was granted 90 days within which to make and serve a case-made. Within the time so extended and on the 11th day of August, 1908, the judge granted an order further extending the time within which to make and serve a case-made to and including the 22nd day of September, 1908. On the 18th day of September, 1908, the court again extended the time within which to make and serve the case-made to October 22, 1908. The case-made was served on counsel for plaintiff on the first day of October, 1908, and on the same day was by counsel for plaintiff returned with suggestion of amendment waived. The order granted thirty days after the service of the case-made within which to suggest amendments, and provided that the case was to be signed and settled on five days' notice in writing by either party, and it is the claim of counsel for plaintiff that the case could not be legally signed and settled later than November 7, 1908. Counsel concedes that he has found no authority decisive of the point made, but argues that, from the language of the statute (§§ 6074 and 6075, Comp. Laws of Okla. 1909), it is contemplated that there could be no lawful delay in the signing and settling of the case-made and its being filed with the papers in the case. Section 6074, *supra,* provides that "the case and amendments shall be submitted to the judge who shall settle and sign the same, and cause it to be attested by the clerk and the seal of the court to be thereto attached. It shall then be filed with the papers in the case." Section 6075, *supra,* provides that after the amendments are suggested, "which when so made and presented (the case) shall be settled, certified and signed by the judge who tried the cause; and the case so settled and made shall thereupon be filed with the papers in the cause." Counsel's contention being that under these provisions, "thereupon" can have no other meaning than "immediately," and

that when counsel, in addition to the delay incident to the signing and settling of the case-made, which took place December 13, 1908, delayed until February 13, 1909, to file the case-made with the clerk of the district court, he abandoned his appeal and the same should be dismissed by this court.

The law under consideration is identical with the statute of Kansas and it has been the uniform practice in that state and in Oklahoma to allow, within the limitation fixed by the statute for filing appeals, extensions of time within which to make and serve a case-made, so long as good cause could be made to appear to the trial judge. Where counsel for plaintiff in error makes and serves his case-made within a lawfully extended time, no lapse of time has been held sufficient to be considered an abandonment of his proceeding. The order of the court extending time within which to make and serve a case should fix the time within which the party served may suggest amendments. The court should, and usually does, direct the notice to be given for the presentation of the case-made for settling and signing after it has been served and amendments suggested or waived. This was done in the present case, but there is no statute fixing the time within which the proposed case-made and the suggested amendments, if any, shall be presented to the trial judge for his action thereon, with the exception of, speaking generally, the year within which the proceeding must be filed in the Supreme Court; hence, in our judgment, the case-made was served in time.

The conclusion which we have here reached finds support in several cases from the Supreme Court of Kansas, among which is the case of *Hill v. First Nat. Bank*, 42 Kan. 364. This case was afterwards referred to and quoted from by that court in the case of *Benham v. Smith*, 53 Kan. 495, wherein the court said:

"Within the authority of *Hill v. National Bank*, 42 Kan. 364, the court below had the power to settle and sign the case, although the time first fixed by its order had expired. The statute limits the time within which a case must be made and served, but no such limitation exists with respect to settling and

signing a case; and the court may, for good and sufficient reasons, postpone the date for the presentation of the case, and cause it to be taken up upon reasonable notice at another time."

On this point, Chief Justice Horton of the Supreme Court of Kansas, in the case of *Hammerslough v. Hackett,* 30 Kan. 57, says:

"While the statute provides for fixing the time in which the case-made must be served, and in which the amendments must be suggested, the time for settling and signing the case by the judge is not prescribed in the statute; therefore, the objection that the case was not made within the proper time is not well founded."

The foregoing discussion and the practical operation of the law referred to also sheds light on the other proposition presented by counsel, to wit, that the delay in filing the completed case-made in the office of the clerk of the district court on February 9, 1909, being a little less than two months after the same was signed and settled, was an abandonment of the appeal. The statute directly applicable (section 6074, *supra*) provides, as we have seen, that the case-made, after being settled and signed, "shall thereupon be filed with the papers in the cause." Counsel contends that the word "thereupon," as here used, means "immediately," and, hence, that where the case-made is not so filed immediately after being signed and settled, the appeal should be dismissed in this court. We cannot concur with counsel in this conclusion. The word "immediately" is undoubtedly one of the synonyms of "thereupon," but from a consideration of the entire act, its practical operation, and its purposes, we do not believe that it was used in that sense in this instance. As we view it, such an application would be inconsistent with the balance of the act, and would be an arbitrary requirement without any substantial reason to support it. The statute fixes a definite time within which a motion for new trial may be filed, within which a case-made may be made and the amendments suggested, and where the time is extended for the making and serving of a case-made, the same is conclusive on the party, and the courts so enforce it. If it was

intended that the case-made should, on penalty of appeal being dismissed, be filed immediately or within any definite fixed time with the papers in the cause, in our judgment, the statute, considering the consequences sought to be involved, would have so stated it and definitely fixed it. So that, it appears to us the reasonable rule to be adduced from the language used, when we consider the entire scope of the law, and the ends to be accomplished, is that, upon the case-made being settled and signed, it shall then be filed with the papers in the cause. Whether by rule of court the time for this could be limited, and whether a postponement for an extraordinary length of time for the purpose of delay might be followed by a dismissal of the appeal, we do not consider or pass upon, but hold that the case-made in this case, being filed within less than sixty days after having been signed and settled, was within time.

The court overruled the demurrer which was filed to the petition and likewise a demurrer which was directed to the sufficiency of plaintiff's evidence, both of which virtually raise for our consideration the same proposition, to wit, Was the plaintiff, under her unchallenged allotment certificate, entitled to the possession of the land, so that pleading and proof thereof shifted the burden to the defendant?

Section 23 of an act of Congress entitled, "An Act to ratify and confirm an agreement with the Choctaw and Chickasaw Tribes of Indians, and for other purposes," approved July 1, 1902 (ch. 1363, 32 Stat. L. 641), is as follows:

"Allotment certificates issued by the Commission to the Five Civilized Tribes shall be conclusive evidence of the right of any allottee to the tract of land described therein; and the United States Indian Agent at the Union Agency shall, upon the application of the allottee, place him in possession of his allotment and shall remove therefrom all persons objectionable to such allottee, and the acts of the Indian Agent hereunder shall not be controlled by the writ or process of any court."

Considering both propositions together, the plaintiff pleaded at

length in her petition and then offered in evidence her certificate of allotment to the tract across which the railway right of way extended. This allotment certificate made no exception whatsoever of the right of way and, in our judgment, on its face entitled plaintiff, under the statute above noted, to the possession of the land involved. See *Sorrels v. Jones et al.,* 26 Okla. 569, 110 Pac. 743.

The defense made to plaintiff's action by the railway company is that the defendant company was authorized to exercise the right of eminent domain, and that it had secured its right in and to this land by virtue of certain proceedings which it had taken under the provisions of "An Act to grant the right of way through the Oklahoma Territory and the Indian Territory to the Enid and Anadarko Railway Company, and for other purposes," approved February 28, 1902, 32 Stat. L., p. 43. It is not denied on the part of plaintiff that the defendant took proceedings with the intention of condemning the strip of land here involved, but it is claimed, among other things, that the statute under which defendant was acting was not complied with and that its proceeding secured for it no title in the land. Referring to the act above noted, section 13 grants to a railway company the right to locate, construct, own, equip, operate, use, and maintain any railway and telegraph and telephone line or lines into, in, or through the Indian Territory, together with the right to take and condemn lands for right of way, depot grounds, etc., and that in so doing it might take any lands held by any Indian tribe or nation or other person in said territory. On the trial of the cause it appeared that the referees selected and appointed by the court to condemn the right of way over the tract of land embraced in plaintiff's allotment returned the damages in the amount of $30, payable to whomsoever was the rightful owner of said land. The damages so assessed were not paid to anyone until November, 1907, at which time the money was paid into court; the action in this cause was at that time pending, it having been begun on the 7th day of May, 1907,

and the contention is made for plaintiff that the defendant acquired no title to the land as a result of its proceedings, for the reason, among others, that it had failed to comply with the statute granting it the right of eminent domain in the Indian Territory. Section 15 of the Enid and Anadarko act last above referred to provides:

"That before any railroad shall be constructed or any lands taken or condemned for any of the purposes set forth in the preceding section, full compensation for such right of way and all land taken and all damage done or to be done by the construction of the railroad, or the taking of any lands for railroad purposes, shall be made to the individual owner, occupant, or allottee of such lands, and to the tribe or nation through or in which the same is situated."

It is contended on the part of defendant that, until the company made full compensation for the right of way and for all damages done by the construction of the railroad, it could not take any land or enter into possession of the tract in question, and that its doing so without having performed these prerequisites made it a trespasser.

Lewis on Eminent Domain, vol. 2, sec. 578, citing a large number of authorities to sustain the text, and speaking of the necessity of a full compliance with the law in order to secure title or right of possession in a company exercising eminent domain, says:

"The only general rule which can be laid down is that possession cannot be lawfully taken without a strict compliance with the statute which applies to the particular case."

And on the question of the necessity of making compensation prior to making entry and taking possession, the authorities seem to be practically uniform. In support of the doctrine thus suggested, the Supreme Court of Pennsylvania, in the case of *Phila., N. & N. Y. R. R. Co. et al. v. Cooper,* 105 Pa. St. 239, says in the syllabus:

"An entry by a corporation invested with the right of eminent domain, upon private land without first making compensation to.

the owner or giving adequate security therefor, is a trespass. Until such compensation is made or security given, the full title to the premises is in the private owner, and he may maintain ejectment for their recovery."

To the same effect, see, also, 2 Lewis, Eminent Domain, sec. 456; 15 Cyc., p. 986; *Meeker v. City of Chicago*, 96 Ill. App. 23; *White v. Wabash, St. L. & P. Ry. Co.*, 64 Iowa, 281; *Dater v. Troy Turnpike & Ry. Co.*, 2 Hill, 629; *Lake Erie & W. Ry. Co. v. Kinsey*, 87 Ind. 514; *Sherman v. Milwaukee, L. S. & W. Ry Co.*, 40 Wis. 645.

At the conclusion of defendant's evidence the plaintiff moved the court to instruct the jury to return a verdict for the plaintiff, which motion the court sustained and directed a verdict accordingly. The jury found the issues in ejectment in the action in favor of plaintiff and also assessed her damages at the sum of $150. There was no evidence to support the verdict for damages and no instructions given by the court as to the proper measure thereof. and the exception taken to the jury's finding in this regard must be sustained. The case is, accordingly, reversed and remanded to the district court of Rogers county for such proceedings, not inconsistent with this opinion, as the parties may elect to take.

All the Justices concur.